

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV–14–79

| | |
|---|---|
| CHARLEEN HORTON<br><br>       APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES and MINOR<br>CHILDREN<br><br>        APPELLEES | **Opinion Delivered** June 4, 2014<br><br>APPEAL FROM THE CONWAY COUNTY<br>CIRCUIT COURT<br>[NO. 15JV-12-42]<br><br>HONORABLE TERRY M. SULLIVAN,<br>JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW<br>GRANTED |

**WAYMOND M. BROWN, Judge**

Appellant appeals the termination of her parental rights to S.S., born March 3, 2010, and W.S., born June 14, 2012.[1] Appellant's counsel has filed a motion to withdraw and a no-merit brief, pursuant to *Linker-Flores v. Arkansas Department of Human Services*,[2] and Arkansas Supreme Court Rule 6-9(i),[3] stating that there are no meritorious grounds to support an appeal. The clerk mailed a certified copy of counsel's motion and brief to appellant, informing her of her right to file pro se points for reversal. Appellant filed a letter with the court, which has been treated as her pro se points. Therein, she essentially argues ineffective assistance of counsel, asserts that she has "straightened [her] life up[,]"

---

[1]The parental rights of Eddie Singleton, putative father of both children, were also terminated below; however, he is not a party to this appeal.

[2]359 Ark. 131, 194 S.W.3d 739 (2003).

[3](2012).



and requests that this court reevaluate her case. Appellant's argument for ineffective assistance of counsel is not properly before this court. Her other points are not arguments. Therefore, none of appellant's pro se points are meritorious. We affirm the order terminating parental rights and grant counsel's motion to withdraw.

On June 13, 2012, appellant gave birth to W.S.[4] Appellant tested positive for methamphetamines.[5] Appellant told the responding caseworker that she had used methamphetamines on June 10, 2012. She admitted to prior use of methamphetamines before becoming pregnant with W.S., though she denied any other drug use during her pregnancy. She admitted daily methamphetamine use prior to becoming pregnant with S.S. A seventy-two hour hold was taken on W.S. and S.S. on June 14, 2012, due to the "apparent drug use of the mother." On June 18, 2012, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect. The court entered an ex parte order granting emergency custody on June 18, 2012.

On June 21, 2012, following a hearing on the same date, the court entered a probable-cause order finding that the emergency conditions that necessitated the juveniles' removal from appellant's custody continued, thereby necessitating DHS's continued custody of the juveniles. The court ordered appellant to participate in random screens and

---

[4]Court records and party pleadings state that W.S. was born on June 14, 2012; however, medical records show that he was born on June 13, 2012. Annette Smith, who was responsible for medical records at the hospital where W.S. was born, testified that W.S. was born on June 13, 2012.

[5]W.S.'s urinalysis shows that he was negative for methamphetamines; this was noted in the affidavit in support of DHS's petition for emergency custody and dependency-neglect. Likewise, the physician's newborn assessment stated that W.S.'s drug screen was negative though appellant's was positive for methamphetamines. However, his meconium was positive for methamphetamines.



a drug and alcohol assessment. On August 28, 2012, the court entered an adjudication and disposition order finding the children dependent-neglected due to neglect and drug use. Appellant stipulated to the dependency-neglect finding. The court gave DHS discretion to increase appellant's unsupervised visitation once she finished rehabilitation. The goal of the case was reunification.

Following a hearing on the same date, a review order was entered on October 25, 2012. Therein the court stated that the children could not be returned to appellant because she needed to "continue working the case plan during a trial home placement prior to returning custody." The court noted that appellant had complied with all of the court orders and the case plan, noting specifically that appellant "voluntarily completed [inpatient] rehabilitation and [had] attended NA/AA meetings twice weekly since discharge, [had] tested clean on all drug screens, [and] completed parenting [classes.]" The order reflected that appellant had made "much progress towards alleviating or mitigating the causes of the juveniles' removal from the home." The court ordered a trial home placement with the children.

Following a hearing on January 3, 2013, a review order was entered on the same date. Therein, the court found that a trial home placement had begun and that the children had done well. Accordingly, the court found it in the best interest of the children to have custody returned to appellant and relieved DHS of care and custody of the children. The case remained open and a review hearing was scheduled for April 25, 2013.

On March 7, 2013, a mandatory reporter called and expressed concerns that appellant was using drugs. On March 8, 2013, appellant visited the local DHS office three

times, leaving her children in the car while she went inside each time. She appeared to be under the influence of drugs. A DHS worker's visit to appellant's home on that same date revealed "a home in disarray[,]" with several health and safety hazards. Additionally, appellant tested positive for methamphetamine on a drug screen during the visit.[6] A seventy-two hour hold was taken on the children on March 8, 2013, due to "the past history of the family, an open court case, the environment[,] and the positive drug screen." DHS filed a petition for emergency custody and dependency-neglect on March 11, 2013.[7] The court entered a second ex parte order for emergency custody of S.S. and W.S. on March 11, 2013.

On May 16, 2013, the court entered an adjudication and disposition order finding the children dependent-neglected due to neglect; appellant stipulated to this finding. The court ordered appellant to have supervised visitation at DHS's office and granted DHS discretion to increase or extend the time for visits. The goal of the case was reunification.

A permanency planning order was entered on August 1, 2013. Therein, the court found the following:

> The juveniles have been in custody for more than one year. Neither parent is complying with the case plan. They are clearly drug-addled, and neither has a job.

---

[6]Appellant also had a friend living with her who tested positive for methamphetamines and THC.

[7]On March 15, 2013, the court entered an order noting that DHS's March 11, 2013 petition was erroneously filed as a new case due to an oversight. Accordingly, the court ordered that all hearings under that matter should be heard under the original case number JV-2012-42, and not the new case number, which the court closed.



No progress has been made. . . . The juveniles need permanency, and the department may proceed with termination.[8]

It then changed the permanency goal of the case to adoption and authorized DHS to petition to terminate appellant's parental rights.

On August 28, 2013, DHS filed a petition to terminate appellant's parental rights on grounds that (1) the children had been out of the parent's custody for twelve months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions had not been remedied by the parent;[9] (2) the court had found the sibling or juvenile dependent-neglected as a result of neglect or abuse that endangered the life of the child, sexual abuse, or sexual exploitation, any of which was perpetrated by the juvenile's parent or parents;[10] and (3) that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juvenile to the custody of the parent was contrary to the juvenile's health, safety, or welfare, and that, despite the offer of

---

[8]In its order, the court stated, "The juveniles were removed from the home on June 14, 2012, and was [sic] placed in the custody of DHS due to inadequate supervision and environmental neglect; specifically, that the home was filthy and the kids were injured as a result, and both mother and father were using marijuana and methamphetamine. The juveniles were adjudicated dependent-neglected on August 23, 2012, because the allegations in the petition and affidavit were true and correct." There is no mention of inadequate supervision, environmental neglect specifically, or marijuana use in DHS's June 14, 2012 petition for emergency custody and dependency neglect. That petition only asserts methamphetamine use. Environmental neglect due to "filth" and marijuana use were referred to in the affidavit in support of DHS's March 11, 2013 petition for emergency custody and dependency-neglect.

[9]Ark. Code Ann. § 9–27–341(b)(3)(B)(i)(*a*) (Supp. 2013).

[10]Ark. Code Ann. § 9–27–341(b)(3)(B)(vi)(*a*).

appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent.[11]

On October 25, 2013, the court entered an order terminating appellant's parental rights and granting DHS the power to consent to adoption. The court found that DHS had proven by clear and convincing evidence the first ground in its petition, namely, that the children had been out of appellant's custody for twelve months and appellant had failed to remedy the circumstances necessitating the children's removal despite meaningful efforts by DHS.[12] The court noted:

> Specifically, the mother Charleen Horton has, since the time of the [second] removal of the juvenile, failed to comply with the case plan and court orders. Charleen Horton has continually tested positive for illegal drugs, including methamphetamine. At other times, she has refused to provide a urine specimen for a drug test at visitation. She failed to follow the recommendations of her psychological evaluations, which included: to work on getting her GED, to attend individual counseling with a focus on her coping skills, and relationship counseling with Eddie Singleton. DHS made several referrals for inpatient drug treatment. On one occasion, Charlene Horton [sic] refused to go to rehab while being transported to the facility. At another time, she did enter rehab but left approximately two weeks later. . . . Both parents have admitted to extensive drug use . . . . Neither parent is employed. The Court specifically found that both parents are clearly drug–addled and no progress has been made.

Considering the likelihood of the children's adoption and the potential harm to their health and safety if returned to appellant's custody, the court found that termination of appellant's parental rights was in the children's best interest and granted DHS's petition for the same.    This timely appeal followed.

---

[11]Ark. Code Ann. § 9–27–341(b)(3)(B)(vii)(*a*).

[12]Ark. Code Ann. § 9–27–341(b)(3)(B)(i)(*a*).

In compliance with *Linker-Flores* and Rule 6-9(i), counsel ordered the entire record and found that after a conscientious review of the record, there are no issues of arguable merit for appeal. Counsel's brief adequately covered each action that was adverse to appellant below. After carefully examining the record and the brief presented to us, we believe counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases and conclude that the appeal is wholly without merit. Accordingly, we affirm the order terminating appellant's parental rights and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

GLADWIN, C.J., and VAUGHT, J., agree.

*Didi H. Sallings*, Arkansas Public Defender Commission, for appellant.

No response.